**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**KIMBERLEY H.,**

                           **Plaintiff,**

**v.**

                                                      **19-CV-6766**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment.  Dkt. No. 12.  Kimberley H. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits.  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Dkt. Nos. 9, 10.  For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, and the Commissioner's motion (Dkt. No. 10) is granted.

## BACKGROUND

Plaintiff filed for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") in 2015, with an alleged onset date of October 1, 2010.  Those

claims were denied at the initial level on September 29, 2015.  Tr. at 144, 154-55.[1]  On

April 11, 2016, Plaintiff filed another claim for SSI, again alleging disability beginning on

October 1, 2010, due to high blood pressure, depression, anxiety, post-traumatic stress

disorder, slurred speech, tingling in left hand and leg, and trouble with balance.  Tr. at 15,

127, 159.  Plaintiff's application was denied at the initial level and she requested review.

Tr. at 48, 49-60, 61-66, 68.  Administrative Law Judge Michael W. Devlin ("the ALJ")

conducted a hearing on August 14, 2018.  Tr. at 29-47.  Plaintiff, who was represented by

an attorney, testified as did an impartial vocational expert.  Tr. at 29-47.  On September

25, 2018, the ALJ issued a decision in which he found that Plaintiff was not disabled and,

therefore, not eligible for benefits.  Tr. at 12-27.  The Appeals Council denied Plaintiff's

request for review, making the ALJ's determination the final decision of the Commissioner.

Tr. at 1-6.  Plaintiff thereafter commenced this action seeking review of the

Commissioner's decision.  Dkt. No. 1.

## LEGAL STANDARD

**Disability Determination**

        The claimant bears the ultimate burden of proving that she was disabled

throughout the period for which benefits are sought.  *See* 20 C.F.R. § 416.912(a); *Schauer*

*v. Schweiker*, 675 F.2d 55, 59 (2d Cir. 1982).  The claimant is disabled only if she shows

she is unable to engage in any substantial gainful activity due to any medically

determinable physical or mental impairment which has lasted, or can be expected to last,

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket
No. 7.

for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R.

§ 416.909; *see Barnhart v. Walton*, 535 U.S. 212, 216-22 (2002).

A disabling physical or mental impairment is an impairment that results from

"anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C.

§ 1382c(a)(3)(D).  Congress places the burden upon the claimant to establish disability by

requiring her to "furnish such medical and other evidence of the existence [of disability] as

the Commissioner of Social Security may require."  42 U.S.C. § 1382c(a)(3)(H)(i).  The

function of deciding whether a person is under a disability within the meaning of the Act

belongs to the Commissioner.  20 C.F.R. § 416.927(e)(1); *Pena v. Chater*, 968 F. Supp.

930, 937 (S.D.N.Y. 1997).

The Commissioner has established a five-step sequential evaluation for

adjudicating disability claims.  20 C.F.R. § 416.920.  A finding of disabled or not disabled at

any step ends the process.  20 C.F.R. § 416.920(a)(4).  Plaintiff has the burden at the first

four steps, and the Commissioner has the burden at the fifth step to demonstrate that the

claimant can perform other work existing in significant numbers in the national economy,

but the burden of proving disability is always on the claimant.  *See* 20 C.F.R. § 416.920;

*Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("[t]he claimant bears the ultimate

burden of proving [disability] throughout the period for which benefits are sought" (citation

omitted)).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the

4

evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).


## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process.

*Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008)

(detailing the five steps).  At step one, the ALJ found that Plaintiff has not engaged in

substantial gainful activity since April 11, 2016, the application date.  Tr. at 17.  At step

two, he found that Plaintiff had the following severe impairments:  lumbar disc

herniation/chronic low back pain; bilateral knee pain; major depressive disorder;

bereavement; bipolar disorder; unspecified anxiety disorder; and post-traumatic stress

disorder.  Tr. at 17.[2]


At step three, the ALJ concluded that Plaintiff's impairments did not, either

individually or in combination, meet or equal the Listings, giving special consideration to

Listing 1.02 (Major Dysfunction of a Joint(s) (Due to Any Cause)); Listing 1.04 (Disorders

of the Spine); Listing 12.04 (Depressive, Bipolar and Related Disorders), Listing 12.06

(Anxiety and Obsessive-Compulsive Disorders), and Listing 12.15 (Trauma and Stressor-

Related Disorders).  Tr. at 18.  Regarding the "Paragraph B" criteria, the ALJ found that

Plaintiff had mild limitations in the broad area of understanding, remembering, or applying

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is detailed at
length in the papers.

information; and moderate limitations in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself.  Tr. at 18-19.

The ALJ found, based on the entire record and the VE's testimony, that Plaintiff retained the following RFC:

> to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except:  she can occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk up to two hours in an eight hour day; sit about six hours in an eight hour day; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds.  She can understand, remember, and carry out simple instructions and tasks; frequently interact with co-workers and supervisors; [have] occasional contact with the general public; is able to work in a low stress work environment (i.e., no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine and processes, etc.); and is able to consistently maintain concentration and focus for up to two hours at a time.

Tr. at 19-22.  Given Plaintiff's RFC, the ALJ found that she was unable to perform her past prior occupations.  Tr. at 22.

Continuing to the fourth step, the ALJ found that Plaintiff was able to perform jobs that exist in significant numbers in the national economy, including the sedentary jobs of table worker (DOT 739.687-182), and Addresser (DOT 209.587-010). Tr. at 23.  Accordingly, concluded the ALJ, Plaintiff was not under a disability from April 11, 2016, through the date of his decision.  Tr. at 24.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 9, 10.  Plaintiff argues that the ALJ:  (1) failed to reconcile two "conflicting" opinions from consulting examiner Dr. Harbinder Toor regarding Plaintiff's physical abilities, to which the ALJ assigned "great weight" and "significant weight," respectively; (2) improperly weighed the opinions of consulting psychiatrist, Dr. Yu-Ying Lin, and treating counselor, Mr. Randy Smart; and (3) "cherry-picked" more favorable evidence of Plaintiff's mental abilities.  Dkt. No. 9.  The Commissioner counters that the ALJ:  (1) gave appropriate weight to Dr. Toor's opinions, both of which were consistent with sedentary work; (2) appropriately assessed Dr. Lin's and Mr. Smart's opinions, adopting those aspects that were consistent with the record as a whole; and (3) properly evaluated all of the evidence in reaching the RFC.  Dkt. No. 10.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err in reaching his decision and that the RFC was substantially supported.


**Dr. Toor's Opinions Regarding Plaintiff's Physical Abilities**

Consultative physician Dr. Toor physically examined Plaintiff on two occasions – first, in May 2016, in connection with Plaintiff's SSI claim (Tr. at 306), and again, in December 2017 to determine her eligibility for County Social Services (Tr. at 627).  Dr. Toor was the only doctor to offer an opinion as to Plaintiff's physical abilities.  In May 2016, Dr. Toor found that Plaintiff had elevated blood pressure, a limited ability to squat, positive straight leg raise, and limited lumbar ROM.  Tr. at 307-308.  The doctor opined that Plaintiff had only moderate limitations in physical functioning, including sitting.

7

Tr. at 309.  During the December 2017 exam, Dr. Toor noted that Plaintiff's squat and lumbar ROM were limited.  Tr. at 628.  Based on the exam findings, Dr. Toor opined that Plaintiff could work up to 40 hours weekly and walk for 2 to 4 hours; stand for 2 to 4 hours; sit for more than 4 hours; push, pull, and bend for 2 to 4 hours; use her hands, see, hear, and speak for more than 4 hours; lift and/or carry 10 pounds frequently and 20 pounds occasionally; climb stairs or perform other climbing for 2 to 4 hours; and could use public transit.  Tr. at 628-629.

In reaching the RFC determination, the ALJ considered both of Dr. Toor's opinions and gave his 2016 opinion "significant weight" and his 2017 opinion (imposing no limit on Plaintiff's ability to sit) "great weight."  Tr at 20, 22.  In giving greater weight to Dr. Toor's less restrictive 2017 opinion, the ALJ reasoned that it was generally consistent with the record, including limited lumbar ROM and no significant treatment for physical complaints.  Tr. at 22.  This Court finds no error in the ALJ's reasoning.  "It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."  *Wilkins v. Comm'r of Soc. Sec.*, No. 1:18-CV-00067, 2019 WL 2500500, at *6 (W.D.N.Y. June 17, 2019); 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e).  Moreover, "[w]here, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, [claimant's] inaction may appropriately be construed as evidence that the condition did not pose serious limitations."  *Diaz-Sanchez v. Berryhill*, 295 F. Supp. 3d 302, 306 (W.D.N.Y. 2018).

This Court notes that Dr. Toor's 2017 opinion was more specific regarding the amount of time that Plaintiff could perform certain work-related activities.  Tr. at 628-629.  Generally, the more specific an opinion is, the more weight it will be afforded.  20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").  Moreover, the two opinions from Dr. Toor were not, as Plaintiff contends, so inconsistent that they needed to be reconciled.  That is, even Dr. Toor's less-detailed, arguably more restrictive opinion from 2016 (assessing moderate-to-marked limitations in prolonged sitting) supported a finding that Plaintiff retained the RFC for sedentary work.

A person need not be capable of sitting for six continuous hours to perform sedentary work; rather, he or she need only be able to sit for two-hour increments during the workday.  *Swain v. Colvin*, 14-CV-869(MAT), 2017 WL 2472224, at *3 (W.D.N.Y. June 8, 2017).  For this reason, "an assessment of moderate to marked limitations for prolonged sitting is consistent with a finding that a claimant can perform sedentary work."  *Josielewski v. Berryhill*, No. 15-cv-00728-MAT, 2018 WL 903471, at *5 (W.D.N.Y. February 15, 2018) (citing *Swain* for the proposition that "[n]ormal work breaks and meal periods split an eight hour workday into approximately two hour periods."); *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (rejecting the argument that "a sedentary worker must be able to sit for six unbroken hours without standing up or shifting position during a work day," reasoning that "[t]he [Commissioner's] regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on

a transcontinental flight").  Thus, this Court finds that substantial evidence supports the

ALJ's physical RFC for sedentary work.


**The Opinions Regarding Plaintiff's Mental Functioning**

***Consultative Examiner Dr. Lin***

In her medical source statement, Dr. Lin concluded that Plaintiff was

moderately to markedly limited in four areas of work-related mental functioning, but was

otherwise unrestricted or only mildly restricted:

> The claimant can follow and understand simple directions and instructions
> without limitation.  She can perform simple tasks independently with
> limitation.  She is mildly limited in maintaining attention and concentration
> and maintaining a regular schedule.  She can learn new tasks without
> limitations.  She is moderately limited in performing complex tasks
> independently and needs supervision.  She is moderate[ly] to markedly
> limited in making appropriate decisions.  She is moderately limited in relating
> adequately with others.  She is moderately to markedly limited [in]
> appropriately dealing with stress.  Difficulties are caused by stress-related
> problems and lack of motivation.
>
> The results of the examination are consistent with psychiatric problems, but
> in itself this does not appear to be significant enough to interfere with the
> claimant's ability to function on a daily basis.

Tr. at 303-304.  Plaintiff argues that the ALJ credited only the favorable portions of

Dr. Lin's opinion and did not account for all the stress-related limitations contained therein.

Dkt. No. 9, pp. 19-22.  Having reviewed the record in its entirety, this Court does not agree.


The ALJ evaluated Dr. Lin's opinion and accorded it "significant weight"

because the doctor had a working knowledge of the SSI program, the opinion was

consistent with the clinical exam findings, and Plaintiff underwent only conservative

treatment for her alleged mental impairments.  Tr. at 21, 22.  These are all appropriate factors to consider in determining how much weight to afford a medical opinion.  20 C.F.R. § 416.927(c)(6) ("[T]he amount of understanding of our disability programs and their evidentiary requirements that a medical source has, regardless of the source of that understanding, and the extent to which a medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion."); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646–47 (S.D.N.Y. 2019) ("While conservative treatment alone is not grounds for an adverse credibility finding, *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008), the ALJ may take it into account along with other factors."); *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (the ALJ was permitted to weigh a claimant's "conservative treatment" regimen in determining claimant's credibility); *Dixon v. Berryhill*, 17 Civ. 0334 (AJP), 2017 WL 3172849, at *16 n.33 (S.D.N.Y. July 26, 2017) ("Courts in this Circuit routinely uphold credibility determinations in which the ALJ finds a claimant's statements about their symptoms not credible based, *inter alia*, on a conservative treatment record.") (citations and quotation marks omitted) (collecting cases).

The record showed that Plaintiff was able to interact with others at least occasionally, and that she had a good relationship with her counselor, Mr. Smart, over many years.  Plaintiff interacted well with her support group led by therapists Eric Koll, Charlene Reeves, and Megan Dingler.  Tr. at 467 (stating that Plaintiff was very engaged

in the group session and "[w]orked hard to provide positive support to others"), 481 (noting that Plaintiff was "very active in group, openly sharing positive insights she [is] working through, including ways she [has] identified to give herself love and support while experiencing painful emotions and situations, [and] actively provid[ing] supportive comments to others"), 492 (stating that Plaintiff "provided support to other group members by sharing her insights about accepting painful emotions and finding joy and comfort for oneself"), 494 (reporting that Plaintiff "inspired group members through passionately sharing how she had coped with . . . being stuck in depression and self-loathing, and how she has moved forward with her life and tak[ing] care of her own needs"); 499 (noting that Plaintiff "shared her experiences . . .  about how to cope and get through the grieving process and especially how she pushes herself to do activities that help her feel better even when she doesn't feel good"), 504 (reporting that Plaintiff "welcomed a new group member," and stated that "one of her goals is to return to school to become a nail technician"), 509 (stating that Plaintiff "connected with other group members by sharing how she experienced her son's grief as well as her own"), 515 (noting that Plaintiff "shared how the group has helped her process her grief and helped her move forward and be more engaged in rebuilding her life and taking care of herself and her children).

        The record also shows that Plaintiff only had conservative treatment for her alleged mental ailments, and that she was non-compliant with her medications.  For example, Plaintiff testified that she saw her therapist, Mr. Smart, every week (Tr. at 36), but her treatment records show that sometimes several weeks would pass between her therapy sessions.  Tr. at 376-77.  Plaintiff unilaterally stopped taking medications that her

12

providers prescribed for her mental health.  Tr. at 373-74 (Dr. M. Saleem Ismail prescribes Lexapro and Seroquel in September 2016); 376 (Mr. Smart reports in November 2016 that Plaintiff "is not willing to take the medicine prescribed" and is "[n]on-compliant"), 400 (Mr. Smart reports in February 2017 that Plaintiff is not taking medications), 1182 (Mr. Smart reports the same in August 2018).  It is undisputed that Plaintiff had no psychiatric hospitalizations.  Tr. at 301.

Based on the record, the ALJ limited Plaintiff to unskilled work in a low stress work environment (defined as no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routine and processes) with no more than frequent interaction with co-workers and supervisors, and only occasional interaction with the public.  Tr. at 19.  This is consistent with the restrictions assessed by Dr. Lin, which at worst, were moderate to marked.  Contrary to Plaintiff's argument, even a marked limitation due to stress does not automatically compel a finding of disability.  *See Miller v. Berryhill*, No. 6:16-CV06467(MAT), 2017 WL 4173357, at *4 (W.D.N.Y. Sept. 20, 2017) ("[T]he Court notes that Dr. Ransom's opinion does not necessarily mandate a conclusion of disability due to the complete inability to deal with stress.  Other courts in this Circuit have affirmed decisions denying benefits in cases where the record contains an opinion that the claimant has a 'marked' limitation in performing a work-related function, such as found by Dr. Ransom.") (citations omitted); *Perry v. Comm'r of Soc. Sec.*, No. 3:15-CV-0758 (GTS), 2017 WL 5508775, at *7 (N.D.N.Y. Jan. 23, 2017), *aff'd sub*

*nom. Perry v. Berryhill*, 711 F. App'x 9 (2d Cir. 2017) (stating that a claimant with a marked limitation in performing a work-related function could perform that function occasionally).

Given that the record shows that Plaintiff was capable of interacting with others and that she was not entirely incapable of dealing with stress, this Court finds that substantial evidence supports the RFC of sedentary work with additional limitations.

***Therapist Mr. Smart***

Mr. Smart completed functional assessments of Plaintiff's mental abilities for DSS in April, July, September, and December 2017, and in April 2018.  Tr. at 611-39.  In each assessment, Mr. Smart concluded that Plaintiff had moderate limitations in her ability to follow, understand, and remember simple instructions and directions and perform low stress and simple work tasks, and that she was very limited in her ability to perform simple and complex tasks independently, maintain attention and concentration for rote tasks, and regularly attend to a routine and maintain a schedule.  Tr. at 611-39.  The ALJ afforded "some weight" to these assessments because of Mr. Smart's treating relationship with Plaintiff, and incorporated these limitations into the RFC.  Tr. at 22.  Contrary to Plaintiff's argument, this Court finds no error in the ALJ's reasoning.   Dkt. No. 9, pp. 22-25.

As Plaintiff acknowledges, Mr. Smart is not an acceptable medical source but an "other source" whose opinion is not entitled to controlling weight.  Dkt. No. 9, pp. 22. Ultimately, the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to

14

no weight or little weight, [although] those decisions should be explained" and be based on all the evidence before the ALJ. *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 241 (W.D.N.Y. 2018) (citing *Oaks v. Colvin*, No. 13-CV-917-JTC, 2014 WL 5782486, *8 (W.D.N.Y. Nov. 6, 2014)); *see also Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) (stating that it is within the ALJ's "discretion to determine the appropriate weight to accord the other source's opinion based on all the evidence before him"). In giving Mr. Smart's opinion less than controlling weight, the ALJ explained that the ultimate determination of whether a claimant is disabled is reserved to the Commissioner, the therapist's statement that Plaintiff could not work was limited to a three-month period, and the therapist referred Plaintiff to vocational rehabilitation indicating that he believed she was capable of low-stress or unskilled work. Tr. at 22, 453, 623. As noted, the ALJ afforded Mr. Smart's opinions "some weight" because he had been Plaintiff's therapist since January 2016. Tr. at 21. The ALJ gave greater weight to the opinion of Dr. Lin who, as a psychiatrist, was an acceptable medical source. Tr. at 21,22.

This Court notes that checkbox forms, which Mr. Smart filled out for DSS, are "not particularly informative." *Halloran*, 362 F.3d at 32; *Emery v. Astrue*, No. 2:11-CV-248, 2012 WL 4892635, at *10 (D. Vt. Oct. 15, 2012*)* (holding that the ALJ did not err in giving doctor's opinion limited weight where the opinion was "given on a fill-in-the-blank-type form, and [was] accompanied by little explanation"). Here, the ALJ also noted that Mr. Smart gave the same responses on all of the forms over the course of several months. Tr. at 21, 613, 618, 623, 634, 638. In addition, Mr. Smart's opinion that Plaintiff continued to be moderately to markedly limited is inconsistent with records showing that Plaintiff was

15

doing better, had changed her maladaptive behaviors, and was having success in the grief support group.  Tr. at 429 (stating that Plaintiff wanted to seek cosmetology training), 433 (noting that Plaintiff wanted to go to school), 456 (noting that Plaintiff was active and participated in group), 464 (indicating that Plaintiff was coping better), 467 (noting that Plaintiff was active and participated in group), 470 (stating that Plaintiff was more optimistic and doing better), 481 (noting that Plaintiff was active and participated in group), 487 (same), 492 (same), 501 (documenting Plaintiff's statement that she walked away from a man who threatened her, rather than getting into an altercation), 1166 (noting that Plaintiff was doing a lot better), 1169 (noting that Plaintiff turned away from a fight rather than yelling back).

        "[T]he ALJ is empowered with the discretion to afford less than controlling weight, or even no weight, to the opinion of other sources," as long as he or she "address[es] and discuss[es] the opinion."  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011).  Because the ALJ did so here, this Court finds no error.

**The Mental Portion of the RFC is Supported by the Record**

        Plaintiff argues that the mental RFC did not account for her impairments and asserts that the ALJ "cherry picked" favorable evidence.  Dkt. No. 9, pp. 25-28.  This Court does not agree.  An ALJ is not permitted to "cherry pick" information in the manner that Plaintiff has alleged.  *See Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).

16

However, an ALJ may accept portions of a physician's report while declining to accept

other portions of that same report.  *See Pavia v. Colvin*, No. 6:14-cv-0679 (MAT), 2015 WL

4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d.

Cir. 2002)).  That is what the ALJ did here.


Plaintiff cites a litany of complaints along with some abnormal mental status

examination findings.  Dkt. No. 9, pp. 26-27.  The ALJ explicitly acknowledged that there

were abnormal exam findings, but observed that many of Plaintiff's issues arose from

family conflict and housing problems.  Tr. at 21; 269 (Plaintiff stating that things would be

greatly improved if she had stable housing), 517 (Plaintiff describing her mother as toxic).

"Situational stressors are not a basis for a finding of disability and may be considered

when evaluating a claimant's subjective reports."  *Taillon v. Comm'r of Soc. Sec.*, No. 17-

CV-6812, 2019 WL 1396837, at *4 (W.D.N.Y. Mar. 28, 2019) (citing *Morgan v. Colvin*, No.

14-CV-0549, 2016 WL 3527906, at *15 (N.D.N.Y. June 23, 2016)); *see also Gonzalez v.

Comm'r of Soc. Sec.*, No. 6:07-CV-629, 2010 WL 55933, at *5 (N.D.N.Y. Jan. 5, 2010)

(holding that the plaintiff's "situational periods of stress" were due to family problems and

financial difficulties, rather than her depressive disorder, and therefore, supported the

ALJ's conclusion that she was not disabled).


Insofar as Plaintiff's allegations are concerned, the ALJ found that her

subjective complaints were contradicted by the record.  For example, Plaintiff told Dr. Lin

that she had one assault charge that was dismissed, but later told Dr. Ismail that she had a

"couple of assault charges."  Tr. at 302, 369.  When Plaintiff applied for SSI, she reported

17

that she was unable to work after 2005, except for a brief time in August 2014.  Tr. at 160.

However, her earnings records show that she worked in 2006, 2007, 2008, 2009, 2010,

and 2014.  Tr. at 152, 196.  Although Plaintiff claimed that she was debilitated by her

mental problems, she was able to use public transportation and meaningfully engage with

others in her support group.  Tr. at 37, 1153.  Ultimately, the ALJ has a duty to weigh all of

the evidence in determining the RFC.  20 C.F.R. §§ 416.945, 416.956; *DeLong v. Comm'r*

*of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (citing *White v. Comm'r of Soc. Sec.*, 572

F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked

evidence; the same process can be described more neutrally as weighing the evidence")).


Plaintiff clearly disagrees with the ALJ's evaluation of the evidence.

However, the substantial evidence standard is so deferential that "there could be two

contrary rulings on the same record and both may be affirmed as supported by substantial

evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012).  That is, "once

an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable

factfinder ***would have to conclude otherwise***."  *Brault*, 683 F.3d at 448 (emphasis

added).  This case does not present such a situation.  For all of the foregoing reasons, this

Court finds that the ALJ's decision is free from legal error and is supported by substantial

evidence.


### <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff's motion for judgment on the

pleadings (Dkt. No. 9) is hereby DENIED, and the Commissioner's motion for

18

judgment on the pleadings (Dkt. No. 10) is GRANTED.  The Clerk of the Court is directed

to close this case.


        **SO ORDERED.**


DATED:        Buffalo, New York
              March 19, 2021


                              *__s/ H. Kenneth Schroeder, Jr.__*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**